Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| DR. EDIEL JOSÉ VARELA DELIZ | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
|---|---|---|
| **RECURRENTE** | | |
| v. | KLAN202400515 | Caso Núm.: SJ2024CV04279 (SALÓN 904) |
| COMISIÓN ESTATAL DE ELECCIONES (CEE), JESSIKA PADILLA RIVERA Y OTROS | | |
| **RECURRIDA** | | Sobre: CÓDIGO ELECTORAL |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2024.

El doctor Ediel José Varela Deliz solicita que revoquemos la sentencia en la que el Tribunal de Primera Instancia (TPI) desestimó el recurso y confirmó la determinación en la que la Comisión Estatal de Elecciones descalificó su candidatura como aspirante al Senado por el Distrito de San Juan.

El 28 de mayo de 2024 ordenamos a la Comisión Estatal de Elecciones (en adelante la Comisión o la CEE), la Honorable Jueza Jessika Padilla Rivera y otros a presentar su alegato. El 29 de mayo de 2024 presentaron *Escrito de oposición a recurso de revisión.*

Los hechos pertinentes a la controversia que atendemos hoy son los siguientes.

### I

El doctor Varela Deliz presentó un recurso de revisión contra los recurridos conforme el Art. 13 del Código Electoral (en adelante, el Código) en el que hizo las alegaciones siguientes. El 31 de enero de 2024, la CEE certificó que había presentado 495 endosos, lo que representaba el 100% de los endosos requeridos para esa fecha. No

obstante, el 14 de febrero había presentado 1,140 endosos de los 990 requeridos, lo que significa que cumplió con más del 100%. Para esa fecha, ya el 95.96% de los endosos estaban validados. Ese mismo día, a las 8:01 pm, la Comisión le notificó que había presentado el máximo de los endosos permitidos durante el segundo periodo y le cerró el acceso a la plataforma del Sistema de Intención de Aspirar a una Candidatura y Sistema de Endosos (en adelante, SIEN). Según el Código, el 15 de febrero, a las doce de la noche, era la fecha y hora límite para cumplir los mil ochocientos ochenta (1,880) endosos. La Comisión le impidió completar los cuarenta y cuatro (44) endosos que le faltaban cuando le cerró el acceso a la plataforma.

El doctor Varela, además, hizo las alegaciones a continuación. El 19 de febrero de 2024, la Comisión le informó que ciento ochenta y ocho (188) de sus endosos fueron rechazados; cuarenta y seis (46) porque el elector no tomó una decisión sobre el endoso en el término permitido y ciento diecinueve (119), porque la firma era incompatible con la que aparece en la petición de inscripción como elector, salvo que fuese subsanada conforme al Reglamento. Afirmó que, la Comisión violó su debido proceso de ley, porque la notificación no advirtió el tiempo para subsanar o rectificar los endosos rechazados. No obstante, a sabiendas de que el Código Electoral establece que son quince (15) días a partir del 15 de febrero de 2024 para subsanar los endosos rechazados, se dio a la tarea de subsanar el error. Sin embargo, el 20 de febrero de 2024, la Comisión le notificó que rechazó su intención de candidatura, porque no cumplió con los requisitos de ley y reglamentos aplicables. La notificación no incluyó apercibimiento y/o notificación del término para solicitar revisión en la Comisión ni el TPI, en violación a su derecho al debido proceso de ley. Desde ese momento, no tuvo acceso al sistema SIEN. El doctor

Varela alegó que la Comisión cometió los errores siguientes ante el Tribunal de Primera Instancia:

ERROR NÚMERO UNO:

> Erró la CEE al no garantizar "la más amplia accesibilidad...**sin barreras y sin condiciones procesales onerosas**, a toda transacción y servicio electoral...", conforme el *Código Electoral* dispone.

ERROR NÚMERO DOS:

> Erró la CEE en dos situaciones fundamentales sobre la firma

> a. al determinar que "La firma del peticionario es incompatible con lo que aparece en su petición de inscripción como elector..."

> b. cuando nada en la ley o el reglamento indica cómo se subsana el endoso rechazado.

ERROR NÚMERO TRES:

> Erró la CEE al impedir que el Aspirante continuara registrando endosos en la plataforma del Sistema de Intención de Aspirar a una Candidatura y Sistema de Endosos (en adelante SIEN), a partir del 14 de febrero de 2024 cuando este disponía hasta el 15 de febrero a las 12:00 pm para cumplir con los requisitos de ley, ya fuese al propósito de sustituir o subsanar; cosas que son distintas dentro del trámite.

ERROR NÚMERO CUATRO:

> Erró la CEE al no garantizar el debido proceso de ley al elector cuando en la notificación de que "su endoso a Ediel José Varela Deliz ha sido rechazado" sin informar y notificar cómo el elector puede subsanar el mismo.

Los recurridos solicitaron la desestimación del recurso.

El TPI dio por sometido el caso, sin necesidad de realizar una vista evidenciaria porque no existe controversia de hechos. El foro primario desestimó la reclamación contra el Estado y resolvió que no era necesaria la expedición de emplazamientos porque el diligenciamiento de la orden de mostrar causa es suficiente para asumir jurisdicción sobre las partes. El tribunal determinó que la única controversia pendiente era la validación de las firmas de los endosos no acreditados al demandante. El Lcdo. Robert Sánchez,

abogado del doctor Varela, argumentó que la vista evidenciaria era necesaria porque la Comisión no evaluó las firmas rechazadas con un experto. A tenor con ello, alegó la necesidad de realizar la vista para presentar los testimonios de los endosantes y de un perito en firmas. Según el letrado, la actuación de la Comisión es nula e ilegal porque violó los derechos constitucionales de su representado.

Por su parte, el Lcdo. Serrano Ramos, abogado del doctor Varela, expresó que la firma no es un elemento para rechazar endosos de primarias, ya que así lo establecen los Reglamentos del PNP y el Código Electoral. Por el contrario, el Lcdo. Passalacqua, representante de la CEE, señaló que la firma es un requisito establecido en el Código Electoral, pero no así un perito en firmas. Igualmente argumentó que el doctor Varela fue descalificado porque no cumplió con la cantidad de endosos validados. Además, señaló que el doctor Varela no tiene legitimación activa para invocar protección para los derechos de los votantes. Por último, argumentó que la Comisión informó al doctor Varela las razones por las que se invalidaron las firmas.

Por su parte, el representante de la Comisionada Electoral del PNP, Lcdo. Vera Muñoz, planteó que la firma es un requisito establecido en la ley para los endosos. Según el licenciado Vera, el doctor Varela no cumplió con el requisito de firma y no subsanó el defecto dentro de los siete días, a partir de la notificación, sino que sustituyó los endosos y se quedó sin oportunidad para añadir nuevos endosos.

El TPI tomó como ciertos todos los hechos bien alegados por el doctor Varela. Al foro primario le quedaron claro los hechos siguientes. El 31 de enero de 2024, la CEE certificó que el doctor Varela presentó 495 peticiones de endoso de las 990 requeridas. El 14 de febrero de 2024 presentó 1,140 peticiones de endoso. A las 8:00 pm de ese día, la CEE le informó que presentó el máximo de

los endosos durante el segundo periodo y le cerró la plataforma de SIEN. El 19 de febrero de 2024, la Oficina de Radicaciones le informó que se rechazaron 188 peticiones de endoso, 46 porque el elector no tomó una decisión sobre el mismo y 119 porque las firmas eran incompatibles.

Según el TPI, el cuarto error señalado no se cometió porque el doctor Varela no tiene legitimación activa para alegar violaciones al debido de ley de los electores. Igualmente concluyó que el segundo señalamiento de error tampoco se cometió. El TPI advirtió que la firma es una de las razones que la ley establece para rechazar una petición de endoso y que uno de los fundamentos para invalidarlo es que no cumpla con uno de los requisitos o se presente fuera del término establecido. No obstante, reconoció que un endoso invalidado por forma incompatible puede subsanarse con una foto en sustitución de una firma. Igualmente reconoció que la ley establece que la falsificación de la firma en la petición de endoso para primarias es un delito. Luego de ese análisis resolvió que el segundo error no se cometió porque la incompatibilidad en las firmas señalada al doctor Varela, constituye un incumplimiento con los requisitos de forma que establece la ley. A eso añadió el hecho de que Varela no subsanó la petición de endoso rechazada con la foto, como lo permite el reglamento aplicable.

El TPI atendió conjuntamente los señalamientos de errores tres y cuatro y los analizó conforme al Art. 7.15 (5) del Código Electoral, 16 LPRA sec. 4625. Según el TPI, dicho Artículo establece las cantidades de endosos que se pueden presentar o no presentar, y los límites a las cantidades de peticiones de endoso que un aspirante puede presentar durante las dos etapas del proceso de presentación de endosos. Al TPI le quedó claro que nadie puede presentar más del ciento veinte por ciento (120%) de las peticiones requeridas. Igualmente se convenció de que durante los últimos

quince (15) días, o sea, del 1 al 15 de febrero, no se pueden presentar más del cincuenta por ciento (50%) del total de las peticiones requeridas. Según su interpretación del Art. 7.15(5) del Código Electoral exige que el aspirante tiene que someter como mínimo el cincuenta por ciento (50%) de los endosos necesarios y como máximo, un ciento veinte por ciento (120%), antes del 31 de enero de 2024.

El foro primario, además, hizo un análisis de las definiciones de invalidez, rechazar, subsanar y sustituir contenidas en el Reglamento para la Radicación de Candidatos de los Partidos Políticos y Candidatos Independientes aprobado el 15 de junio de 2023.

Luego de ese análisis, el foro primario concluyó que el doctor Varela no tiene razón cuando alega que tiene derecho a hacer la sustitución que le falta, porque la ley no establece que el máximo de ciento veinte por ciento (120%) de los endosos, sólo aplica a la primera etapa del 1 de diciembre al 31 de enero de 2024. El foro primario sostuvo que el texto de la ley es claro en que, durante el segundo término de presentación de endosos, ninguna persona puede presentar más del cincuenta por ciento (50%) de las peticiones de endosos requeridos. Su conclusión se fundamenta en que el propósito de la ley, al permitir que someta el ciento veinte por ciento (120%) de los endosos, es evitar que quien desea ser candidato o aspirante, pierda esa posibilidad si se determina que alguno de los endosos debe ser rechazado. Según el TPI, de esa forma se garantiza cierta seguridad, porque en la segunda etapa podrá sustituir los endosos rechazados, pero nunca podrá exceder el cincuenta por ciento (50%) que dispone el estatuto.

El TPI determinó que no existe controversia de que el doctor Varela tenía que presentar 990 peticiones de endosos. Según su interpretación de la ley, desde el 1 de diciembre de 2023 o desde que

determinó ser candidato hasta el 31 de enero de 2024, tenía derecho a presentar 1,188 endosos, o sea, el ciento veinte por ciento (120%) de los endosos requeridos. No obstante, el TPI advirtió que sólo presentó cuatrocientos noventa y cinco (495) endosos, o sea, el cincuenta por ciento (50%) de las peticiones necesarias. Según el TPI, por lo tanto, sólo podía presentar 495 endosos del 1 al 15 de febrero de 2024 y de los presentados se rechazaron ciento diecinueve (119) porque las firmas eran incompatibles y cuarenta y seis (46), porque el elector no firmó el endoso.

El foro primario concluyó que el Reglamento citado no permite subsanar una petición de endoso rechazada, ya que sólo puede ser reemplazada por una nueva. El TPI resolvió que, si una petición de endosos rechazada tiene que sustituirse por una nueva, el doctor Varela no podía someter esos endosos desde que completó los 495 endosos entre el 1 al 14 de febrero de 2024. El 23 de mayo de 2024, el TPI desestimó el recurso y confirmó a la CEE.

Inconforme, el doctor Varela presentó este recurso en el que señaló que el TPI cometió los errores siguientes:

**PRIMERO**: ERRÓ EL TRIBUNAL AL AVALAR LA TEORÍA DESESTIMATORIA DE LOS RECURRIDOS EN CUANTO A QUE NO SE CUMPLIÓ CON LOS REQUERIMIENTOS DE ENDOSOS QUE SE ESTABLECEN EN EL ARTÍCULO 7.15 (5) SOBRE LA CANTIDAD DE PETICIONES DE ENDOSO QUE SE PUEDEN SOMETER EN LAS FECHAS Y POR CIENTOS QUE ESTABLECE LA LEY.

**SEGUNDO**: ERRÓ EL TRIBUNAL EN SU CONCLUSIÓN SOBRE EL CUARTO ERROR SEÑALADO POR EL RECURRENTE A LA CEE; NO GARANTIZAR EL DEBIDO PROCESO DE LEY AL ELECTOR CUANDO EN LA NOTIFICACIÓN DE QUE "SU ENDOSO A EDIEL JOSÉ VARELA DELIZ HA SIDO RECHAZADO" SIN INFORMAR Y NOTIFICAR CÓMO EL ELECTOR PUEDE SUBSANAR EL MISMO.

**TERCERO**: ERRÓ EL TRIBUNAL EN CUANTO A SU DETERMINACIÓN SOBRE EL SEGUNDO ERROR SEÑALADO A LA CEE SOBRE SI EL CÓDIGO ELECTORAL PERMITE QUE SE UTILICE LA FIRMA COMO RAZÓN PARA RECHAZAR UNA PETICIÓN DE ENDOSO.

**CUARTO**: ERRÓ EL TRIBUNAL CRASAMENTE EN SU DISCUSIÓN SOBRE LOS ERRORES TRES Y CUATRO DE LA CEE PORQUE SU INTERPRETACIÓN NO SE AJUSTA A LA LEY Y TAMPOCO EL DERECHO.

**QUINTO**: ERRÓ EL TRIBUNAL AL NO ENTRAR A UNA VISTA EVIDENCIARIA, ESPECÍFICAMENTE EN CUANTO AL ASUNTO DE LA FIRMA, CUESTIÓN QUE ES DE UMBRAL A TODO LO ALEGADO.

**SEXTO**: ERRÓ CRASAMENTE EL TRIBUNAL AL DETERMINAR QUE, CUANDO UNA PETICIÓN DE ENDOSO ES RECHAZADA, ESTA NO ES SUSCEPTIBLE A SER SUBSANADA Y QUE, A DIFERENCIA DE LAS PETICIONES SUSCEPTIBLES A SER SUBSANADAS, LAS PETICIONES DE ENDOSO QUE SON RECHAZADAS SÍ SON SUSCEPTIBLES DE SUSTITUCIÓN; ELLO NO TIENE NINGÚN SENTIDO JURÍDICO Y SE PRESTA A CONFUSIÓN; LA LEY ES CLARA A ESOS EFECTOS Y TENEMOS QUE AJUSTARNOS A LA LEY.

**SÉPTIMO**: ERRÓ EL TRIBUNAL AL SOSLAYAR QUE EL CERRAR EL SISTEMA SIEN PARA LOS EFECTOS DE LA SUBSANACIÓN DE FIRMAS SIN DEJAR EXPIRAR EL TÉRMINO DE QUINCE DÍAS PARA SUBSANACIONES A PARTIR DEL 15 DE FEBRERO DE 2024, FUE UNA ACTUACIÓN ULTRA VIRES POR PARTE DE LA CEE Y EN GRAVE PERJUICIO AL ASPIRANTE.

## II

### Código Electoral de Puerto Rico de 2020
### Ley Núm. 58-2020

Los tribunales estamos obligados a dar prioridad a la deferencia que merecen las decisiones de la Comisión. El legislador reconoce a la Comisión como la institución pública con mayor pericia en asuntos electorales y la responsable de implementar los procesos que garanticen el derecho fundamental de los electores a ejercer su voto en asuntos de interés público. Art. 12.1, 16 LPRA sec. 4841 (2) (a).

El Art. 7.1, 16 LPRA sec. 4611, establece la creación de una Comisión de Primarias para cada partido político que tendrá a cargo la aprobación de un Reglamento de Primarias y Métodos Alternos de Nominación. No obstante, dicho reglamento no podrá confligir con las disposiciones de la ley.

Por su parte, el Art. 7.15, 16 LPRA sec. 4625, de Ley Núm. 58-2020 regula las peticiones de endoso de los aspirantes primaristas y los candidatos independientes.

El inciso primero establece el período para la presentación de endosos que es del 1 de diciembre del año anterior al de las elecciones generales y concluirá al mediodía del 15 de febrero del año de las elecciones generales. El mismo dispone expresamente que este término es fatal. Si la fecha de vencimiento coincide con un día feriado o no laborable, se entenderá que es el siguiente día laborable.

Según el segundo inciso, toda petición de endoso solamente se tomará, presentará y evaluará a través de la plataforma del sistema SIEN, a partir del ciclo electoral 2024. El inciso 3 (b) dispone que los aspirantes primaristas y los candidatos independientes a los cargos electivos de senador y representante por acumulación o distrito tendrán que cumplir con el tres por ciento (3%) del total de papeletas íntegras votadas válidamente por el candidato que más votos obtuvo para el mismo cargo en la anterior elección general. La cantidad de peticiones de endoso nunca excederá de tres mil (3,000) en estos casos. Por su parte, el inciso cuarto tipifica como delito electoral, que cualquier persona: (1) cometa fraude, transmitiendo o entregando endosos con información falsa, (2) falsifique una firma en una petición de endoso para primarias y (3) incluya información sin autorización del elector o aspirante. La presentación de información falsa es razón suficiente para la descalificación. La Comisión de Primarias del partido concernido tendrá veinte (20) días para pasar juicio sobre la validez de las peticiones presentadas. Toda petición no rechazada dentro de dicho término se tendrá por validada. Los aspirantes solo tendrán siete (7) días, a partir de la devolución de las peticiones rechazadas, para sustituirlas.

**El quinto inciso establece que en ningún caso se podrá presentar más de ciento veinte por ciento (120%) de las**

**peticiones requeridas. Durante los últimos quince días del periodo de presentación de peticiones de endoso, nadie podrá presentar más del cincuenta por ciento (50%) del total de las peticiones requeridas para la aspiración o candidatura. Los endosos requeridos deberán ser recibidos y remitidos a la Comisión, desde la certificación de la candidatura por el partido político hasta el 15 de febrero del año de las elecciones generales. A partir de esa fecha, el aspirante o candidato tendrá quince (15) días para subsanar los endosos invalidados por la Comisión.**

Por su parte, el inciso seis contiene la información que tiene que incluir las peticiones de endoso. Su letra (g) incluye la firma como parte de la información requerida en la petición de endoso. El inciso once (11) establece las razones por las que se puede invalidar el endoso. Según lo dispuesto en su letra (d), una de esas razones es que la petición esté incompleta en alguno de los campos o requisitos. Además, según la letra (f), es razón para invalidar el endoso, que la petición se presente fuera del término que establece este subtítulo. Por último, el inciso trece (13) tipifica como delito electoral grave que cualquier persona transmita o presente a la Comisión o juramente una petición de endoso con información falsa y sin la autorización del elector.

**Reglamento para la Radicación de Candidatura de los Partidos Políticos y Candidaturas Independientes aprobado el 15 de junio de 2023**

La base legal de este reglamento es la Ley Núm. 58-2020, Sección 1.2. La Sección 1.4 incluye varias definiciones pertinentes a la controversia que nos ocupa. Estas definiciones son las siguientes:

18. "Endoso defectuoso": Es aquella petición de endoso, cuyo endosante no tiene una cuenta en el eRE, declarado invalido por la Unidad de Validaciones por incompatibilidad en la firma o la foto tomada al Elector como parte del procedimiento de presentación de

endosos y aquella(s) que figura(n) en el Registro General de Electores.

...

24. "Invalidar": acción de dejar sin efecto la presentación de una petición de endoso en el sistema SIEN por ausencia de compatibilidad con los requisitos para su validez, susceptible de ser subsanado.

...

39. "Rechazar": acción de denegar la presentación de la petición de endoso en el sistema SIEN debido a una deficiencia sustancial e incorregible, no subsanable, que impide cumplir con los requisitos para su validez.

...

43. "Subsanar": acción de remediar una petición de endoso inicial con el fin de cumplir con los requisitos para su validez.

44. "Sustituir": acción de reemplazar una petición de endoso inicial rechazada mediante la presentación de una petición de endoso nueva en el sistema SIEN, con el propósito de cumplir con los requisitos para su validez.

Por su parte, la Sección 5.6 es cónsona con el Art. 7.15 (4 y 5), *supra*, del Código Electoral. La Sección 5.6(1) establece el Proceso de Validación de Endosos para los Aspirantes Primaristas de Partidos Políticos. Según lo dispuesto en esa sección:

1. La Unidad de validación de Partido Político concernido tendrá veinte días calendario para pasar juicio sobre la validez o rechazo de las peticiones de endosos presentadas.

2. Toda petición de endoso no rechazada dentro de dicho término se tendrá por validada y le será acreditada al aspirante que la presentó.

3. Los aspirantes tienen siete días calendario a partir de la devolución de las peticiones rechazadas para sustituir las mismas.

4. A partir del 15 de febrero de 2024, el aspirante o candidato independiente tendrá quince días para subsanar los endosos invalidados.

El inciso número tres (3) sobre Disposiciones Adicionales de la Sección 5.6 establece que cuando una petición de endoso es rechazada, el sistema SIEN genera una comunicación automática al

endosante, funcionario autorizado y al aspirante o candidato independiente notificándole la determinación tomada.

**III**

El doctor Varela hace siete señalamientos de errores que están íntimamente relacionados y que discutió muy escuetamente. No obstante, la controversia medular en este caso es si la Comisión erró al descalificarlo como aspirante en las primarias y si el TPI se equivocó al confirmar su decisión. Luego de un análisis minucioso de la totalidad de este expediente y escudriñar en el sistema SUMAC todos los casos relacionados, estamos convencidos de que el doctor Varela no derrotó la prioridad de deferencia que tiene la decisión de la Comisión que es la institución pública con mayor expertise en asuntos electorales y la responsable de implementar los procesos que garanticen el derecho fundamental de los electores a ejercer su voto.

El doctor Varela tiene que entender que el Código Electoral establece que el término para que los aspirantes a primarias cumplan con la cantidad de endosos requeridos es fatal. Este término comenzó el 1 de diciembre de 2023 (año anterior a las elecciones generales) y venció al medio día del 15 de febrero de 2024 que es el año de las elecciones generales. Dicho aún más claro, a esa fecha y hora, el doctor Varela tenía que cumplir con el cien por ciento (100%) de los endosos que se le exigían para poder participar en las primarias. Por tratarse de un término fatal, ningún aspirante podía presentar nuevos endosos a partir el medio día del 15 de febrero de 2024. Quien a esa fecha y hora no tuviera los endosos necesarios, quedaba automáticamente descalificado de participar en las primarias como candidato. Al doctor Varela fue lo que precisamente le ocurrió.

El 14 de febrero de 2024 fue notificado de que el sistema SIEN se cerró porque había cumplido con la totalidad de endosos que

establece la ley. No obstante, el 19 de febrero de 2024, la Oficina de Radicaciones de la Comisión le informó que 188 de sus endosos fueron rechazados, 46 porque el elector no tomó una decisión sobre el endoso en el término permitido y 119 porque la firma era incompatible con la que tiene la Comisión en su récord. La invalidación de esos endosos ocasionó la descalificación del doctor Varela, porque ya no cumplía con la cantidad de los endosos requeridos en la ley. El 20 de febrero de 2024, el doctor Varela fue notificado que su candidatura fue rechazada, porque no cumplió con los requisitos para ser aspirante.

Advertimos que cuando una petición de endoso es rechazada, el sistema SIEN genera una comunicación automática al endosante, funcionario autorizado y al aspirante sobre la determinación tomada. No obstante, del expediente no surge que el doctor Varela y las personas que manejan su aspiración a candidato, actuaran con la diligencia requerida para corregir o subsanar las peticiones de endoso y cumplir con los requisitos para su validez. El remedio para el doctor Varela no era "sustituir" o reemplazar las peticiones de endoso inicialmente rechazadas, mediante una petición de endoso nueva. El sistema cerró el 14 de febrero de 2024, cuando cumplió con el 100% de los endosos que exige la ley. Una vez esto ocurre, ya el aspirante no puede presentar nuevos endosos, porque ya tiene todos los que son necesarios. Sin embargo, sí podía corregir los defectos de firma señalados en el término de quince (15) días establecido y no demostró ante el TPI que se le impidiera. El Código Electoral es claro. Los endosos rechazados no son subsanables. Únicamente pueden ser sustituidos por nuevos endosos. La ley les concede a los aspirantes siete (7) días, a partir de la devolución de la petición rechazada, para sustituirlos. Sin embargo, Varela no podía traer nuevos endosos porque ya había cumplido los que le permite la ley.

A diferencia, los endosos invalidados si pueden subsanarse. El término para hacerlo es de 15 días, a partir del 15 de febrero de 2024. El doctor Varela tampoco tiene razón en este escenario, porque no demostró que trató de subsanar los endosos dentro del término de quince (15) días, contado a partir del 15 de febrero de 2024.

Varela Deliz se privó a sí mismo de tener el ciento veinte por ciento (120%) de los endosos que podía recoger antes del 31 de enero de 2024, porque en ese periodo, la ley le impone cumplir una cantidad mínima. Sin embargo, ese periodo no establece un máximo de endosos. Si hubiese completado el ciento veinte por ciento (120%) en ese primer periodo, muy probablemente, hubiese cumplido con la cantidad de endosos que exige la ley, a pesar de todos los que se invalidaron.

Por otro lado, el doctor Varela argumenta que se le impidió accesar al SIEN a partir del 14 de febrero de 2024 y que tenía hasta el 15 de febrero a las 12:00 pm para corregir los señalamientos a los endosos. No obstante, tomamos conocimiento de que la señora Raquel Vélez Molina declaró durante la vista realizada en el caso SJ2024CV02669 haber recibido adiestramientos del Comité de Campaña de otro candidato para la colección de endosos electrónicos de conformidad al Código Electoral vigente y la reglamentación aprobada para este ciclo electoral. Asimismo, admitió tener acceso al sistema SIEN las 24 horas del día y que en la plataforma se podía enterar de los endosos rechazados y las fechas en que fueron rechazados, pero aceptó que no entraba en la plataforma todos los días. Igualmente, declaró que tuvo acceso al sistema SIEN hasta el 16 de febrero de 2024. También expresó que, como parte del proceso de colectar endosos, le tomaba la firma a los endosantes.

A nuestro juicio es obvio que, contrario a lo aducido en este caso, el doctor Varela Deliz tenía acceso al sistema SIEN y podía saber exactamente cuándo se rechazaron las peticiones de endosos presentadas, para así poder subsanarlas o sustituirlas dentro del término establecido por ley.

El doctor Varela insiste en la necesidad de realizar una vista evidenciaria con el interés de pasar prueba para evaluar las firmas de los endosos rechazados. La vista no procede, porque no alegó, planteó, ni demostró que trató de subsanar las deficiencias señaladas a los endosos y no se le permitió. Además, la vista no es necesaria, porque no existe controversia sobre los hechos esenciales del caso y solo resta aplicar el derecho.

Por último, los cuestionamientos que el doctor Varela hace sobre la importancia de la firma son totalmente irrazonables. La firma es lo que precisamente identifica al elector. El Código Electoral reconoce que la firma es uno de los requisitos que debe contener el endoso y advierte que constituye fraude y delito electoral falsificar una firma en una petición de endoso y que conlleva la descalificación.

Este tribunal está obligado a reconocer la deferencia del foro administrativo, debido a que el doctor Varela no nos puso en posición para determinar que la Comisión incumplió con la ley y el reglamento aplicable. Únicamente hizo meras alegaciones, insuficientes para derrotar la norma de la deferencia.

**IV**

Por lo antes expuesto, se confirma la sentencia del TPI que avaló la decisión de la Comisión de descalificar al doctor Varela, en ausencia de evidencia alguna que derrote la deferencia prioritaria que tienen las determinaciones de ese organismo gubernamental en materia electoral.

A tenor con el Art. 13.3 de la Ley Núm. 58-2020, 16 LPRA sec. 4843 (2) y (3), se ordena la notificación inmediata del mandato, debido a que no hay derecho a reconsideración.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

**Notifíquese inmediatamente.**

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones